## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| THOMAS GOODIN | CIVIL ACTION NO. 05-1890 |
| VS. | SECTION P |
| JOE DAVIS, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Thomas Goodin on October 28, 2005. Goodin is a convict in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Ouachita Correctional Center (OCC), Monroe, Louisiana. He is also awaiting trial on unspecified charges in the Fourth Judicial District Court.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### STATEMENT OF THE CASE

On May 16, 2005 plaintiff was sentenced to serve "5-7 years" in the custody of the LDOC. [Doc. 5-1, p. 9, paragraph 2] However, he is also awaiting trial in the Fourth Judicial District Court on other unspecified charges. Plaintiff makes the following specific complaints.

1. Alcoholics Anonymous

In mid-April, 2005, plaintiff was charged with a disciplinary rule violation. He appeared before the disciplinary court which was composed of Lt. Powell and Corporal Baker. Plaintiff explained his version of events and the hearing was continued to allow additional investigation.

Shortly thereafter, plaintiff corresponded with Chaplain Womack and requested that he be

1

allowed to participate in the prison's Alcoholics Anonymous (AA) program. Powell advised Womack and plaintiff that he would not be considered for the program until the disciplinary investigation was complete.

On June 13, 2005 plaintiff wrote a letter to Assistant Warden Murray complaining of the actions of Powell and Womack and requesting transfer to an LDOC facility.

On August 23, 2005, plaintiff spoke to Chaplain Womack and again complained that he was still not allowed to enroll in AA. Womack advised plaintiff that there was nothing he could do to remedy the situation. Plaintiff also complained to Womack about "the air in visitation."

On August 25, 2005, plaintiff submitted a written request for enrollment in AA to Chaplain Womack.

On September 14, 2005 plaintiff again spoke to Womack and inquired about the status of the August 25 written request. Womack advised plaintiff that he did not receive the request. Womack also advised plaintiff that he was in charge of the AA program and that as far as he was concerned, all inmates were welcome to enroll and attend.

On September 15, 2005 plaintiff asked Powell to explain why plaintiff was not allowed to attend AA. Powell advised plaintiff that he had nothing to do with AA and advised plaintiff that he would investigate the situation.

Plaintiff claimed that as of October 3, 2005, he was still not enrolled in AA. Plaintiff submitted what purport to be ARP grievances dated 8/25/2005, 9/14/2005, 9/15/2005, 9/19/2005, and 9/22/2005. [Doc. 5-2, pp. 12-19]

2. Paul Campbell

In March, 2005 plaintiff complained that he was being harassed by Deputy Smith. Sometime thereafter Paul Campbell met with plaintiff and the other inmates of Pod 7 and advised them that the inmates' families were calling "his boss" and complaining about conditions in

Pod 7. Campbell advised the inmates that he would take away their "ice privileges" if their families continued to call and complain about conditions in the Pod. Plaintiff advised Campbell that his family had complained because he had been "...placed on the hall for asking a question and did not have no bathroom nor water ... for 2 hrs..." Campbell advised plaintiff that the deputy did not owe plaintiff an answer. Plaintiff and Campbell argued and Campbell advised plaintiff that should he continue to argue, "I'm go 'roll my shit up.'" According to plaintiff, this is prison slang for having an inmate beaten.

Plaintiff submitted an ARP grievance complaining of these events. This ARP was dated September 22, 2005. [Doc. 5-2, pp. 1-2]

On August 15, 2005 plaintiff corresponded to Warden Wheelis and requested a transfer to the Richwood Correctional Center in Monroe where he would have access to educational, religious, and rehabilitative programs and where he would be allowed to "interact" with his children. Defendant Campbell responded to this request by reminding plaintiff that although he was an LDOC inmate, he was also awaiting trial on pending charges and therefore not eligible for such a transfer. [Doc. 5-2, p. 5]

On August 13, 2005 plaintiff claims that he was "harassed" by Campbell. On that date, Campbell assembled the inmates of Pod 8 (including plaintiff) and advised that someone was making inappropriate comments to construction workers in the recreation yard. As a result, Campbell advised the inmates that should the behavior continue, their recreation yard privileges would be suspended indefinitely. Plaintiff advised Campbell that such action would be a violation of the inmates' rights to Due Process. Plaintiff argued with Campbell and advised that he would have his family contact the Sheriff. Campbell then had plaintiff removed from the pod and placed in the hall for three hours during which time plaintiff was denied water and the use of the restroom.

Plaintiff claimed to have submitted an ARP grievance concerning this incident. The document purporting to be that grievance is dated September 13, 2005; therein plaintiff contended that the incident occurred on that same date and not in August as alleged in the complaint. [Doc. 5-2, p. 3]

### 3. Assistant Warden Murray

Plaintiff claimed that he previously corresponded to Assistant Warden Murray requesting a transfer to the physical custody of the LDOC. Murray did not grant plaintiff's requests.

On June 14, 2005 plaintiff wrote another letter to Murray requesting transfer to an LDOC facility. On June 15, 2005 plaintiff filed an ARP (Administrative Remedies Procedure) Grievance alleging Murray's "lack of concern or responsibility" and her "openly and wrecklessly [sic] discriminating against plaintiff..."

Plaintiff submitted an ARP grievance dated June 15, 2005. The grievance complained of Murray's lack of concern. [Doc. 5-2, pp. 6-11]

### 4. Warden Wheelis

In July, 2005, plaintiff was interviewed by Warden Wheelis. Plaintiff told Wheelis that he wanted a transfer to an LDOC facility where he would be eligible to participate in various rehabilitation programs. Wheelis told plaintiff that the OCC operates a G.E.D. program. Plaintiff claimed that he was refused entry. Wheelis advised plaintiff that he would be allowed to enter the program when it commenced again in 2006.

Plaintiff complained to Wheelis about the lack of programs available at OCC such as "... Drug programs, 'AA', anger managment, vocational, educational ... religious time ..." contact visitation, recreation opportunities, and inadequate law library.

According to plaintiff, defendant Campbell advised Wheelis that plaintiff had in the past been found not guilty of numerous other charges. Plaintiff claims that this is why Campbell and

others are prejudiced against him and refuse to transfer him to an LDOC facility.

Wheelis advised plaintiff that neither he nor his administration owed plaintiff any excuse or explanation for their decision to retain him in custody.

5. Conditions of Confinement

On August 19, 2005, plaintiff requested an ARP from Defendant Deputy Baker. Plaintiff advised Baker that he wanted to complain about sanitation problems "... trash sit in unit for 12 hrs with nonthing [sic] but food and spit, behind 50 inmates sitting around the unit all day long, we are not issued clean up supplies after meals... inmates forced to cut hair directly next to a hot water pot that's an average 180° and told to stand or sit on the ice cooler, and there is no disinfectant given with the clippers that's being used by 50 inmates. There is no 'ice scup' inmates 50 of them use hands and cups. And in the morning we receive no disinfectant for toilet area, the vents are dirty. The showers given no special care at all build up and green fungus is around them, no matts. The trays are filty [sic] with brown stangs [sic] in them, the chow karts [sic] and cooler for tea has an oder. [sic]"

Plaintiff also complained to Baker that the trustee area was more sanitary. Baker advised plaintiff that the trustees worked and that explained why the area was cleaner. Plaintiff then requested a prison job but was refused. Plaintiff also complained on behalf of a fellow inmate who was not issued adequate clothing.

Plaintiff submitted what purports to be an ARP grievance concerning these claims. [Doc. 5-2, p. 24 and p. 23; also pp. 20-22]

On June 29, 2005 plaintiff was the subject of a "shake down" search. He was removed from his cell, "...told to drop his boxers and squat and cough, and placed in another unit out of view..." He was then returned to his cell and asked to identify his locker. Some of plaintiff's law books were found in another inmate's locker. Plaintiff advised the officers that he and the other

5

inmate were researching a project together. Plaintiff was advised if his books were found in another inmate's locker, they would be "trashed." Plaintiff gathered his law books and placed them on his bunk.

Plaintiff complained to Corporal Londo that "...it was illegal to search us down why plaintiff was in another unit..." Defendant Campbell overheard the complaint and advised plaintiff to sue them. Plaintiff claims that when he returned to his cell he discovered "books, soap, pens, knit cap, and some ... legal material missing..."

On August 29, 2005, plaintiff was denied regular law library privileges. When he requested an ARP to complain about his denial, he was told, "...if I press the 'box-inner com' I will roll my shit up thats [sic] to say going to the hole..." Plaintiff used a sheet of his own paper to write the ARP concerning the denial of his law library privilege. [See Doc. 5-2, pp. 20 - 21]

### 6. Complaints to the Sheriff

On August 9, 2005 plaintiff's fiancee spoke to Joe Davis, the Sheriff's designee. She complained about the conditions of confinement and that plaintiff was being denied AA, G.E.D., and "hard labor." She complained that plaintiff was entitled to a transfer to a facility where he could participate in various rehabilitative programs. She was advised that since plaintiff still had pending charges, he would not be transferred. Plaintiff claimed that other inmates similarly situated have been transferred.

### 7. Prayer for Relief

Plaintiff asks for judgment declaring the defendants' actions have violated the Constitution and for a judgment "compelling defendants to provide and stop..." He seeks compensatory damages totaling $10,001. Finally he asks the court to help plaintiff help himself by allowing him to obtain rehabilitation and skills needed to be a productive member of society.

6

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a

7

plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed an original and an amended complaint. It appears that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that plaintiff has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

### 2. Alcoholics Anonymous

Plaintiff claims that the defendants have denied him the opportunity to participate in AA meetings at prison. Plaintiff's claims are somewhat ambiguous, but suggest two possible theories supporting his claim for relief.

#### a. Due Process

Plaintiff claims that he was wrongfully charged with a disciplinary rule violation in April, 2005. He further claims that the defendants agreed to his request for further investigation but have failed to conclude this promised investigation. Finally, he claims that either as a result of this still pending investigation or due to the bias or prejudice of the defendants he has been denied the opportunity to participate in the prison AA program.

Plaintiff was not convicted of a disciplinary rule violation. Nevertheless, to the extent that he suggests that his due process rights were violated by the defendants, he fails to state a claim for which relief might be granted. In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), the ambit of a prisoner's potential Fourteenth Amendment due process liberty claims has been dramatically narrowed. A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the

8

inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the duration of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).

Plaintiff lost no good time by virtue of the allegedly inadequate or unfair disciplinary proceedings which at worst resulted in the denial of AA participation, and therefore, he has no federally protected due process rights in connection with the proceedings. Consequently, plaintiff's claim against the defendants lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### b. Deliberate Indifference

Plaintiff's claim may also be construed as a denial of medical care claim arising under either the Eighth Amendment's prohibition against cruel and unusual punishment or the Fourteenth Amendment's guarantees of due process.

During the time period in question, plaintiff was both a convict and a pre-trial detainee. The constitutional right of a pretrial detainee to medical care arises from the due process guarantees of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000). That right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.* Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.* The same test is applied under an Eighth Amendment analysis appropriate to the resolution of a convict's medical care claim. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

Thus, plaintiff can establish an actionable constitutional violation only if he alleges facts

9

tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not, nor can he, make such a showing.

Deliberate indifference in the context of the failure to provide reasonable medical care to either a pretrial detainee or a convict means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff does not contend that he suffers from alcoholism. At best, plaintiff merely implies that he suffers from alcoholism. He provides no objective evidence to support such a claim. The evidence submitted by the plaintiff does not reveal that he was ever subject to a "substantial risk of serious harm." Nor does he suggest that he availed himself of treatment when he was in the "free world." He has not alleged that the lack of treatment for that condition has resulted in any serious injury or harm to him. He thus has not established the "serious medical need" component

of the test articulated above. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that the defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

In short, to the extent that plaintiff's inability to participate in AA meetings states a claim arising under either the Eighth or Fourteenth Amendment, the facts alleged herein do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claim is therefore frivolous and dismissal on that basis is recommended.

### 3. Paul Campbell

Plaintiff argues four complaints concerning defendant Paul Campbell. First, plaintiff complains that Campbell threatened to take away inmates' "ice privileges" should their families continue to complain to Campbell's superiors. Second, when plaintiff disputed Campbell's authority on this issue, Campbell threatened plaintiff with physical harm. Third, Campbell was assigned to respond to plaintiff's August 15, 2005, request for a transfer; Campbell denied the request and reminded plaintiff that he was not only an LDOC convict, but also a pre-trial

detainee awaiting trial on pending charges.[1] Finally, plaintiff and Campbell argued again sometime in either August or September. The argument concerned Campbell's threat to terminate recreation privileges for Pod 8. As a result of the argument, plaintiff was removed from the pod and placed in the hall for three hours during which time he was denied water and restroom privileges.

Thus, plaintiff contends that he has been threatened with physical abuse and loss of ice privileges and recreation privileges. The Prison Litigation Reform Act requires a physical injury before a prisoner can recover for psychological damages. 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The Fifth Circuit teaches the "physical injury" required by section 1997e(e) "must be more than de *minimus* [sic], but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).

Plaintiff has alleged no physical injury resulting from the alleged wrongful acts of Mr. Campbell. Section 1997e(e) bars all of petitioner's claims for monetary damages as a result of the alleged threats since plaintiff has alleged no physical injury resulting from the alleged wrong-doing. Further, these threats are akin to verbal abuse and it has been clearly established that mere allegations of verbal abuse do not present an actionable section 1983 claim. *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir.1993). The threatening language and gestures of a custodial officer do not amount to a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.); *cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)(quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla.1977)). Consequently, these allegations lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338

---

[1] This claim is discussed in Part 4.

(1989).²

Likewise, §1997e bars recovery for the incident involving plaintiff's punishment. Plaintiff's claim that he was denied water and the use of a restroom for a period of no more than three hours, while regrettable, could not have resulted in anything more than a *de minimis* physical injury.

### 4. Transfer Requests

Plaintiff faults Campbell, Murray, Wheelis and the Sheriff of Ouachita Parish for refusing his repeated requests for a transfer to a different institution.

Plaintiff does not allege, nor do the pleadings suggest that he is unlawfully incarcerated. Lawfully incarcerated persons retain only a narrow range of protected liberty interests. Broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business

---

² This does not necessarily end the inquiry, however, since in addition to a claim for monetary relief in the form of compensatory damages, plaintiff's complaint seeks an order directing the defendants "...to provide and stop..." To the extent that this should be construed as a request for injunctive relief, it must be noted that the Fifth Circuit has held that the physical injury requirement of § 1997e(e) does not apply to requests for declaratory or injunctive relief. *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir.2001).

However, even if the physical injury requirement of § 1997e(e) does not bar consideration of petitioner's claims for injunctive relief, his requests are nonetheless barred by the standing limitation described in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). This court lacks jurisdiction to entertain such claims for injunctive relief because the plaintiff has not shown or even alleged a <u>likelihood of future harm</u>. Plaintiff's allegations do nothing to establish a real and immediate threat that defendants would violate his rights in the future. *Cf. id.* at 105, 103 S.Ct. 1660. Plaintiff's claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners do not have a constitutionally derived liberty interest in being held in any particular institution. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

In short, plaintiff has no constitutionally derived liberty interest in where he is to be incarcerated and therefore, his allegations of fault fail to state a claim under §1983.

5. Conditions of Confinement

Finally, plaintiff argues several complaints concerning specific conditions of confinement at the prison facility. First, plaintiff claims that he is forced to endure uncomfortable and unsanitary conditions at the OCC. Regrettable as that may be, plaintiff has not established that he is entitled to monetary damages for his pain and suffering and mental anguish.

"[P]rison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation." *Sanford v. Brookshire*, 879 F.Supp. 691, 693 (W.D.Tex.1994). The United States Constitution "forbids deprivation of the basic elements of hygiene." *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir.1983) (Eighth Amendment claim). However, in order to succeed on a deprivation-of-hygiene claim, plaintiff must show an "extreme deprivation" of sanitation. See *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59

(1981)).

Furthermore, as shown above, 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997).

Plaintiff has not alleged any physical injury resulting from the unsanitary conditions of his confinement. He is therefore unable to recover damages based upon this claim. See *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir.2001) (holding that a plaintiff was not entitled to money damages as a matter of law on his claim for mental and emotional stress due to an increased risk of illness, cold showers, cold food, unsanitary dishes, insect problems, inadequate clothing, and the presence of an open cesspool near the housing unit because he did not allege any physical injuries resulting therefrom); *Harper*, 174 F.3d at 719 (finding that a prisoner complaining about his placement in administrative segregation failed to demonstrate a physical injury as required by §1997e(e) sufficient to support a claim for monetary damages); *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 630-31 (5th Cir.2003), *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004) (nausea and vomiting caused by raw sewage on floor of jail cell was *de minimis*).

Plaintiff has not demonstrated that he suffered from any physical injury that was more than *de minimis*, therefore his claim for monetary damages is legally without merit. See *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir.2001) (holding that a plaintiff was not entitled to money damages as a matter of law on his claim for mental and emotional stress due to an increased risk

15

of illness, cold showers, cold food, unsanitary dishes, insect problems, inadequate clothing, and the presence of an open cesspool near the housing unit because he did not allege any physical injuries resulting therefrom); *Harper*, 174 F.3d at 719 (finding that a prisoner complaining about his placement in administrative segregation failed to demonstrate a physical injury as required by §1997e(e) sufficient to support a claim for monetary damages).

Plaintiff's conditions of confinement claim is likewise frivolous.

Plaintiff also complains that following a June 29, 2005, "shake-down" some items of personal property were missing.

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.*, 451 U.S. at 536-37, 101 S.Ct. at 1913. The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation

16

of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, as is the case herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that an intentional, random, and unauthorized deprivation occurred when items of personal property were seized from the inmate by an unidentified prison official. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983. Therefore, the court concludes that plaintiff's claim is frivolous. See 28 U.S.C.

17

§1915(e)(2)(B)(i) and (ii).

Finally, plaintiff complained that on August 29, 2005 he was denied law library privileges. When he complained, he was threatened with physical harm. As shown above, mere threats of harm are insufficient to state a civil rights violation.

To the extent that plaintiff contends that his right of access to the courts was violated when he was denied law library privileges on one day, such a claim is clearly frivolous. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

In order to prevail on an access-to-the-court claim, a prisoner must demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff has alleged no such injury, nor can the undersigned imagine an injury resulting from a one-day deprivation of library privileges.

This claim is clearly frivolous.

### 6. Conclusion

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers, Monroe, Louisiana, this 6th day of March, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE